IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02406-REB-MEH

JESUS JOHN HERNANDEZ,

     Applicant,

v.

UNITED STATES PAROLE COMMISSION, and
BLAKE DAVIS, Warden,

     Respondents.

---

**RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

---

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

     Applicant has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application") [doc #1]. Respondents have filed their Answer [doc #18] together with certain documents appended as exhibits, and Applicant timely submitted a traverse [doc #25]. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. Based on the record contained herein, I **recommend**[1] that the Application be denied and that this matter be dismissed with prejudice.

---

[1] The parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656,

**BACKGROUND**

Applicant is currently incarcerated at the Englewood Federal Correctional Institution ("FCI") in Littleton, Colorado, as a result of a parole violator warrant executed on September 25, 2007.

The circumstances leading up to Applicant's current incarceration are as follows. On March 3, 1986, United States District Judge Jim Carrigan imposed an aggregate 20-year sentence, to be followed by a 10-year special parole term, for Applicant's convictions of distribution and possession with intent to distribute cocaine and conducting a continuing criminal enterprise. Response, Exh. A. Applicant was placed in the Federal Bureau of Prisons ("BOP") to serve the prison portion of his sentence, and the BOP aggregated his sentences to a single aggregate 20-year sentence, with a 10-year term of special parole to follow. *Id.*, Exh. C.

Applicant was released on parole on July 30, 1994, with a sentence expiration date of September 24, 2005. *Id.*, Exh. D. At the time of his release, Applicant also signed a special parole certificate, acknowledging that, upon completion of his "regular" parole term, he would be required to commence his ten-year special parole term. *Id.,* Exh. E. On October 25, 1996, the U.S. Probation Office informed the Commission that Applicant had violated the conditions of his parole by failing to report a change in employment, using illegal drugs, associating with persons having a criminal record, and violating a special condition of his parole that he not perform work as a paralegal. *Id.*, Exh. F. In response to this information, the Commission issued a violator warrant for Applicant's arrest, charging him with the alleged violations. *Id.*, Exh. G. That warrant was executed by Applicant's arrest on November 4, 1996. *Id.* Following a parole revocation hearing, the Commission revoked Applicant's parole and ordered that he be re-paroled on May 6, 1997, after serving six months in custody. *Id.*, Exh. H. The Commission affirmed this decision upon administrative appeal. *Id.*, Exh. I .

---

659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Applicant was released into the community pursuant to the Commission's instructions on May 6, 1997. *Id.*, Exh. J. Only months later, Applicant again failed under supervision, committing perjury by falsifying a motor vehicle salesperson license, failing to provide truthful information to the probation office, and failing to comply with his special drug aftercare conditions. *Id.*, Exh. K. The Commission subsequently issued a violation warrant, revoked Applicant's parole, and ordered that he serve an additional twelve months in custody. *Id.*, Exhs. L, M, and N. This decision was also affirmed on administrative appeal. *Id.*, Exh. O.

Applicant was released on parole again on February 23, 1999, with the same September 24, 2005 expiration date. *Id.*, Exh. P. Once again, Applicant continued using illegal drugs and failed to comply with the special drug aftercare conditions on his parole. On October 24, 2003, Applicant accepted an expedited parole revocation, whereby he waived his right to contest the fact that he violated the conditions of his parole, agreed to an on-the-record revocation of his parole, and agreed to serve an additional eight months' incarceration. *Id.* Exh. Q. The Commission memorialized this agreement on November 5, 2003, noting that Applicant was scheduled to be released on parole under the agreement on May 15, 2004. *Id.*, Exh. R. The Commission subsequently rescinded this date for an extra three months, because Applicant had possessed a weapon in the institution. *Id.*, Exh. S.

On August 13, 2004, Applicant was released on parole into the community for the last time, again with the same expiration date. *Id.*, Exh. T. Applicant apparently completed the remainder of his regular parole (through September 24, 2005) without incident. At that time, pursuant to this Court's judgment and commitment order, and Applicant's signed special parole certificate dated July 24, 1994 (*see* Exh. E), Applicant then began serving his ten-year special parole term. Although Applicant had previously signed the special parole certificate in 1994 without protest, Applicant signed another certificate involving the same terms on October 3, 2005, noting "signed under order." *Id.*, Exh. U. Applicant's probation officer, Kurt Pierpont, drafted a cover letter with the certificate

and addressed to the USPC stating, "Please note that parolee has notified me that he will be appealing the Special Parole Term and filing a writ of habeas corpus for violation of the ex post facto clause of the U.S. Constitution." *Id.*

On June 18, 2007, Applicant's probation officer requested that the Commission terminate Applicant's parole early. *Id.*, Exh. V. Prior to the Commission's decision regarding early termination, however, Applicant's probation officer informed the Commission that Applicant had tested positive for cocaine use and was failing to report. *Id.*, Exh. W. In response to this information, the Commission issued a violation warrant for Applicant. *Id.*, Exh. X. Applicant was arrested on that warrant on September 25, 2007. *Id.* at 5. The September 2007 warrant is a subject of the within Petition.

On October 2, 2007, Applicant appeared before a probation officer for a preliminary interview to determine whether there was probable cause to continue with revocation proceedings against Applicant. *Id.*, Exh. Y. At the preliminary interview, Applicant requested the appointment of counsel, and on October 12, 2007, United States Magistrate Judge Shaffer appointed the Federal Public Defender to represent Applicant in the special parole revocation proceeding. *Id.*, Exh. Z. On November 21, 2007, the Commission notified Applicant that it had found probable cause and would schedule a final revocation hearing for him. *Id.*, Exh. AA. The revocation hearing was scheduled for, and occurred on, January 17, 2008. *Id.*, Exh. BB.

Prior to the hearing, Applicant's appointed counsel at the Federal Public Defender's Office moved to withdraw from the criminal proceeding. *Id.*, Exh. CC. According to the Public Defender, Applicant had been offering legal advice to his other clients, implying that the other clients should raise ineffective assistance of counsel arguments regarding counsel's actions. *Id.* On November 30, 2007, Applicant's former counsel advised the Commission that the Federal Public Defender's Office no longer represented Applicant in the special parole revocation proceedings. *Id.*, Exh. DD. After

learning that Applicant had been providing legal advice to other prisoners as well, his probation officer requested that the Commission supplement the outstanding warrant to include a charge of "acting in a paralegal capacity," which is another violation of the conditions Applicant's special parole. *Id.*, Exh. EE.

At the January 17, 2008 revocation hearing, Applicant and his counsel appeared before a Parole Commission hearing examiner. *See* Doc. #47, Exh. A. After hearing evidence on both sides regarding the charges of a traffic violation, failure to report to the probation officer, failure to submit to drug testing, and a positive drug test, the hearing examiner recommended that Applicant's special parole be revoked. *Id.* Thereafter, on February 8, 2008, the Commission notified Applicant of its decision to revoke Applicant's parole. *Id.*, Exh. C. The Commission ordered him returned to prison to serve a total of twelve months in custody before release on parole. *Id.* Applicant appealed the decision to the National Appeals Board on February 22, 2008. *Id.*, Exh. E.

## PROCEDURAL HISTORY

In his original Application filed November 16, 2007, Applicant alleges that Defendant United States Parole Commission ("USPC") is "unlawfully confining the petitioner," and that "Special Parole was and is repealed and does not apply to the petitioner." Specifically, Applicant claims that the "Special Parole" statute has been repealed and "superseded by other laws enacted by the Congress of the United States and by the legal opinions of the Supreme Court of the United States." Petition at 4. Four days later, Applicant filed an Amendment to his Petition pursuant to Fed. R. Civ. P. 15(a), claiming that the USPC is "not complying with 18 U.S.C. § 4209" governing the conditions of his parole, and particularly with the drug test. Doc. #2 at 2. On December 12, 2007, the District Court issued an Order to Answer Within Three Days [doc #7]. After being granted an extension of time, Respondents filed their Response on December 31, 2007 [doc. #18]. Before the Response was filed, however, Applicant filed a "Second Amendment" to the Petition on December 26, 2007 [doc. #15].

Although Applicant filed the Second Amendment without leave of court as required by Fed. R. Civ. P. 15(a), Respondents answered the allegations raised in the Second Amendment in their Response to the Petition; therefore, the Court recommends the District Court find that Respondents consented in writing to the filing of the Second Amendment pursuant to Rule 15(a). *See Mayle v. Felix*, 545 U.S. 644, 663 (2005). In the Second Amendment, Applicant requests that Respondents be compelled to produce requested discovery and to conduct a local revocation hearing forthwith, and he asks that he be released on a reasonable bond or placed in a halfway house during further review of this action. Doc. #15 at 4.

Thus, as a result of Applicant's Petition, First Amendment and Second Amendment, the Court construes the pleadings liberally and identifies the following four claims made by the Applicant against Respondents: (1) Respondents have unlawfully confined the Applicant as a result of the execution of the parole violator warrant; (2) Special Parole itself was repealed and thus does not apply to the Applicant; (3) Respondents have failed to comply with 18 U.S.C. § 4209 with respect to the proper administration of drug tests; and (4) Respondents failed to provide discovery and timely schedule a local revocation hearing.

In response to Applicant's Petition, First Amendment and Second Amendment, Respondents argue that Applicant's special parole term is not only valid, but is an additional form of supervision created by Congress for certain drug offenders such as Applicant, and is in addition to, not in lieu of, other forms of supervision. Response, December 31, 2007, at 10. Respondents cite to Tenth Circuit law for the proposition that, although the statute governing Applicant's special parole term (18 U.S.C. § 841(c)) was repealed by the Sentencing Reform Act of 1984, the statute still applies to convictions for offenses committed before November 1, 1987. *Id.* at 11. In addition, Respondents state that, to the extent Applicant challenges the sufficiency of the September 2007 warrant, such challenge is premature, as the revocation hearing has not yet occurred. *Id.* at 12-13. Finally,

Respondents claim that the currently scheduled January 18, 2008 hearing is timely, and that any delay which may occur would be as a result of Applicant's conduct. *Id.* at 14.

Applicant replied to the Response arguing that he has been denied his statutory right to a "speedy" revocation hearing, since, according to Applicant, the hearing should have occurred sixty (60) days from the date of his preliminary interview (October 2, 2007), rather than from the date on which probable cause was found (November 21, 2007) pursuant to 18 U.S.C. § 4214(a). Traverse at 3. Applicant cites *Morrissey v. Brewer*, 408 U.S. 471 (1972), for the proposition that parolees are granted certain due process rights, including a revocation hearing "within a reasonable time." *Id.* at 5. Applicant asserts that his "issues" with counsel has had no impact on any delays for holding a revocation hearing. *Id.* at 8. Further, Applicant contends that delay caused by this Court in issuing the Order to Answer and granting Respondents an extension of time "served to exacerbate the matters of delay here." *Id.* at 10. Finally, Applicant claims he has been prejudiced in that he had not yet received from Respondents (as of January 8, 2008) the urine sample which allegedly contained unauthorized drugs and which led to his arrest on September 25, 2007. *Id.* at 6.

On February 22, 2008, this Court issued a request for supplemental briefing (status reports) on the revocation hearing that was set to take place on January 17, 2008. Doc. #45. Applicant has pending before the District Court a motion for extension of time to provide his status report, until a date ten days after the Respondents' status report is filed [doc. #46]. Respondents timely filed their status report on March 3, 2008 [doc. #47]. Thus, if Applicant's motion were granted, he would have been required to file a Status Report no later than March 17, 2008. However, Applicant has failed to file any response to this Court's request for a status report.

According to Defendants, Applicant appeared before a Parole Commission hearing examiner for the revocation hearing on January 17, 2008. Doc. #47 at ¶ 4. At the hearing, the presiding hearing examiner discussed Applicant's conviction for a traffic violation and his technical parole

violations with him. Doc. #47-2. On the basis of Applicant's plea to the traffic violation charge, testimony presented at the hearing indicating that Applicant had, among other things, failed to report to his probation officer and failed to submit to drug testing, and other documentary evidence, the hearing examiner recommended that Applicant's special parole be revoked. *Id.* Following the hearing, the Commission did in fact revoke Applicant's special parole, ordered him returned to prison, and ordered his release after the service of 12 months in custody. Doc. #47-3. The Commission officially notified Applicant of its decision on February 8, 2008. Doc. #47-4.

The Commission then requested that the Federal Bureau of Prisons designate Applicant to a federal institution to serve the 12-month violator term. Doc. #47-5. Applicant has administratively appealed the Commission's decision to the Commission's National Appeals Board. The Commission received this appeal on February 27, 2008 and is processing it pursuant to 28 C.F.R. § 2.26. Doc. #47-6.

## **DISCUSSION**

### I. Standard of Review

Because Applicant is proceeding without counsel, the court must construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, at the same time, the court should not act as the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

### II. Section 2241 Challenges - Execution of Parole Violator's Warrant

In challenging the execution of a parole violator's warrant, the Applicant correctly filed his petition pursuant to 28 U.S.C. § 2241. "A motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001)

(emphasis added). In his petition and subsequent amendments, Applicant contends that Respondent "is unlawfully confining the Petitioner," that Respondent "is not complying with 18 U.S.C. § 4209" with respect to the administration of a drug test, and that Respondents failed to comply with 18 U.S.C. § 4214(a)(1)(B) regarding the timing of a revocation hearing. He asks that he "be released forthwith," that "Respondents be compelled to provide the discovery requested by the Petitioner," and that "a Local Revocation Hearing be conducted forthwith."

### A. First and Third Challenges - Exhaustion Requirement

To the extent the Applicant challenges the substantive matters involving the execution of the warrant itself (*i.e.*, unlawful detention, failure to comply drug test procedures), he has failed to exhaust his administrative remedies. "A prisoner challenging a Parole Commission decision is required to exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citation omitted); *see also Garraway v. United States Bureau of Prisons*, 68 Fed. Appx. 962, 963 (10th Cir. 2003) (in challenging the decision of the Parole Commission, applicant must exhaust his administrative remedies); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir.1987) (citing regulations that allowed the plaintiff to contest the Parole Commission's decisions and concluding that "[t]his administrative remedy must be utilized before a suit can be brought pursuant to § 2241[ ].") (*per curiam*); *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (prior to seeking habeas relief under § 2241, federal prisoners must exhaust administrative remedies) (*per curiam*); *Rosati v. Haran*, 459 F. Supp. 1148 (E.D.N.Y. 1977) (before obtaining judicial review of a parole commission decision, an inmate must exhaust the administrative remedies provided by the parole commission).

Applicant asserts in a November 11, 2007 "declaration" attached to his Application that he is "quite familiar with the requirement that administrative remedy [sic] must first be sought in most cases prior to seeking relief in Court," but that "Respondents have for years refused to provide me

with the forms that are normally utilized when one appeals from a decision and/or an action of the United States Parole Commission . . . " *See* Doc. #1 at 9. Applicant's position is untenable. He fails to explain how Respondents' alleged years-long refusal pertains to his September 25, 2007 arrest and his challenge to the execution of the parole violator warrant.

"The Parole Commission has established an administrative remedy procedure through which an inmate can seek formal review of any decision to grant, rescind, deny or revoke parole." *See Cota v. United States Parole Comm'n*, 2008 WL 126609, *4 (D. Colo. Jan. 9, 2008) (quoting *Cruz v. Clark*, 684 F. Supp. 1335, 1337 (E.D. Va. 1988), which cites 28 C.F.R. § 2.26 (1987)). Pursuant to 28 C.F.R. §§ 2.48-2.50, the parolee undergoes a preliminary interview after which the Commission determines whether there is probable cause to believe parole has been violated; then, if the parolee requests a local revocation hearing, such hearing will take place at which the parolee may introduce evidence in support of his position, and after which the Commission will render a decision as to whether to revoke parole; finally, the parolee may appeal an unfavorable Commission decision to the National Appeals Board pursuant to 28 C.F.R. §2.26.

Here, the Applicant participated in a preliminary interview at which he denied the charges brought against him, and after finding probable cause, the Commission held a local revocation hearing on January 17, 2008. Doc. #47-2, Exh. A. The Commission determined to revoke the Applicant's parole until September 24, 2008 at which time parole will be reinstated. Doc. #47-3, Exh. B. The exhaustion doctrine requires that Applicant present his claim challenging the warrant to the National Appeals Board before the Court may review the Commission's decision. Applicant has demonstrated his familiarity with this appeal process by filing an appeal of the Commission's January 17, 2008 decision with the National Appeals Board. *See* Doc. #47-6, Exh. E. Thus, this Court **recommends** that the Applicant's first claim for relief be dismissed without prejudice for the Applicant's failure to exhaust his administrative remedies.

B.  Fourth Challenge to Procedural Issues

With respect to Applicant's claims that the Parole Commission unlawfully delayed issuing a probable cause finding and delayed scheduling a local revocation hearing, Applicant's claims fail on their merits. The Tenth Circuit has held that "delay [of a parole revocation hearing], per se, does not constitute a violation of due process ... where the parolee has finally been afforded the revocation hearing and the facts have been fairly adjudicated." *McNeal v. United States*, 553 F.2d 66, 68 (10th Cir. 1977). Rather, "the delay, taking into consideration all the circumstances, must also be prejudicial." *Id.* Applicant has not alleged that the delay interfered with his ability to call witnesses or present evidence, or nor has he explained with any specificity how he was otherwise prejudiced by the delay. "Even if the delay was unjustified, that fact alone is of no help to petitioner if finally a fair hearing was held which satisfied the requirements of the Constitution." *Id.* at 69; *see also White v. Braley*, 172 F.3d 880, *1 (10th Cir. 1999) (unpublished).

Here, the evidence demonstrates that, at the revocation hearing, Applicant was represented by counsel and was allowed to present evidence in support of his position regarding the execution of the parole violator warrant. *See* Doc. #47-2, Exh. A. Since January 17, 2008, Applicant has filed no motion for permission to supplement his Application, and has made no claims that the Commission violated the Constitution at the revocation hearing. Applicant has failed to demonstrate that he suffered prejudice as a result of any delay on the part of the Commission in finding probable cause or in scheduling the local revocation hearing; thus, this Court **recommends that** the claims raised in Applicant's Second Amendment [doc. #15] be dismissed with prejudice.

### III. Second Challenge - Validity of Special Parole Term

Although the Application in this matter is styled entirely as a habeas corpus petition under 28 U.S.C. § 2241, Applicant, in his second claim for relief, challenges the validity of his imposed sentence - *i.e.*, the ten-year special parole term. Thus, his claim should have been brought pursuant

to 28 U.S.C. § 2255. *See Webb v. Booker*, 1996 U.S. App. LEXIS 13386, *4 (10th Cir. June 5, 1996) (citing *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965). This Court **recommends** that the District Court dismiss the Applicant's second claim for relief without prejudice.

## CONCLUSION

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [filed November 16, 2007; doc #1] be **denied** as follows:

(1) the first and third claims for relief be dismissed without prejudice for failure to exhaust administrative remedies;

(2) the second claim for relief be dismissed without prejudice for improper characterization of claim; and

(3) the fourth claim for relief be dismissed with prejudice.

Dated at Denver, Colorado, this 24th day of March, 2008.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge